UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NICK HAUENSTEIN,

        Plaintiff,

v.

SOFTWRAP LIMITED, KEITH SCHIERON, DYLAN SOLOMON and JOHN AND JANE DOES, 1-20,

        Defendants.

No. C07-0572MJP

ORDER DISMISSING CASE WITHOUT PREJUDICE AND COMPELLING ARBITRATION OF CLAIMS

        This matter comes before the Court on Defendants' motion to dismiss or stay and to compel arbitration. (Dkt. No. 5.) Plaintiff opposes the motion. (Dkt. No. 10.) Having considered the motion and response, Defendants' reply (Dkt. No. 15), the documents submitted in support thereof and the record herein, the Court GRANTS the motion to dismiss and instructs Plaintiff to arbitrate his claims against Softwrap.

## Background

        Plaintiff Nick Hauenstein is a commercial software developer from Kirkland, Washington. (Lloyd Decl. ¶ 4-6.) Through his own company, Mr. Hauenstein develops and distributes several software products, including a product called xICE Desktop ("xICE"), which allows users to password protect and encrypt files. (Id. ¶ 6.) In September 2004, Mr. Hauenstein was contacted by Defendant Keith Schieron, a vice president at Defendant Softwrap, Ltd. Softwrap is an Isle of Man company that offers a virtual "shrink-wrapping" program that provides software authors and developers with a secure means of digitally selling and distributing their software. Mr. Schieron invited Mr. Haeunstein to distribute xICE through Softwrap's business partners, who would take a commission on the sales. (Hauenstein Decl. at 2.) Mr. Hauenstein agreed and used Softwrap's

ORDER - 1

shrink-wrapping program to prepare his software for distribution. (Id. at 2-3.) About a month later, Mr. Hauenstein learned that Softwrap had inadvertently provided a digital "key" to potential xICE purchasers, which allowed people to download and use the xICE program for free. (Hauenstein Decl. at 3.)

As explained by Softwrap's director, Marc Mitchell, to use Softwrap's shrink-wrapping program, a software "author" must first register with Softwrap. To register, an author must go to Softwrap's website, download a software developer kit, install the kit, and run the registration program. (Mitchell Decl. ¶ 7.) The author must input information into a series of screens. (Id.) One of those screens requires the author to check a box indicating "I accept the terms and conditions of the Softwrap License Agreement." (Id.) That screen indicates that the License Agreement is available for review on the Softwrap website. (Id.) This registration process, which is a prerequisite to using Softwrap's shrink-wrapping program, has been in effect since early 2000. (Id.)

According to Softwrap's business records, Mr. Hauenstein registered with Softwrap on its website on three separate occasions: October 30, 2000, December 26, 2001, and April 12, 2002. (Mitchell Decl. ¶ 8.) Each time he registered, in order to complete his registration, Mr. Hauenstein was required to check a box indicating that he accepted the terms of Softwrap's License Agreement. (Id.)

Although Softwrap's License Agreement has been revised since 2000, both versions provided by Defendants include the same provision requiring arbitration of all disputes between the parties arising from the agreement, including disputes as to the validity or existence of the agreement:

*Arbitration*

All disputes between the parties arising from this agreement, including disputes as to the validity or existence of this agreement shall be referred to and finally determined by arbitration, conducted in the English language in London, and in accordance with the Expedited Arbitration Rules of the World Intellectual Property Organization ("WIPO"). The proceedings shall be secret and the award shall be final and binding on the parties, and each party consents to the award being made an order of any court of competent jurisdiction.

(Mitchell Decl. ¶ 9 & Ex. A (2000 License Agreement), Ex. B (2002 License Agreement)).

Based on the language in the License Agreement, Defendants have moved to dismiss or stay the case and to compel arbitration. (Dkt. No. 5.) Plaintiff opposes arbitration. Plaintiff maintains that he did not agree to arbitrate this dispute, and that it would be unconscionable to apply the License Agreement to his commercial transaction with Softwrap. (Dkt. No. 10.)

**Discussion**

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, provides that an arbitration provision in a contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As the Supreme Court has explained, this section of the FAA is "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). District courts must compel arbitration where a valid agreement to arbitrate exists. See Chiron Corp. v. Ortho Diagnostic Systems, Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). The party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration. Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 91-92 (2000); Zuver v. Airtouch Commc'ns, 153 Wn.2d 293, 302 (2004).

The issues of validity and enforceability of an arbitration agreement are governed by state law. Ticknor v. Choice Hotels Int'l, Inc., 265 F.3d 931, 936-37 (9th Cir. 2001). Like federal law, Washington has a strong public policy favoring enforcement of arbitration agreements. Adler v. Fred Lind Manor, 153 Wn.2d 331, 341 n.4 (2004). The issues presented here, to be decided under Washington law, are whether Plaintiff agreed to arbitrate his dispute and whether the License Agreement, which contains the arbitration provision, is procedurally or substantively unconscionable.

**I.     Plaintiff Agreed to the Terms of the License Agreement**

Under Washington contract law, in order to form a valid contract, the contracting parties must objectively manifest their mutual assent. Keystone Land & Dev. Co. v. Xerox Corp., 152 Wn.2d

ORDER - 3

171, 177-78 (2004). "Generally, manifestations of mutual assent will be expressed by an offer and acceptance." <u>Id.</u> at 178. Plaintiff does not dispute that he registered with Softwrap on three separate occasions, and that on each of those occasions, he manifested his assent to the License Agreement by "clicking" the appropriate box. Instead, he attempts to create an issue of fact through his declaration by focusing on the single transaction of "wrapping" his software. He states:

> And up to this point, I was able to "wrap" my xICE Desktop by downloading and installing a software program, and then running it through a step-by-step process which did not include an arbitration clause of any kind. The "I agree to Softwrap's terms" checkbox also was not part of the wrapping process. Thus, it was not within my reasonable expectations to have this matter arbitrated in the United Kingdom.

(Hauenstein Decl. at 3.) But as Defendants explain in their reply, Mr. Hauenstein was not prompted to agree to the License Agreement when he wrapped his xICE program because he had already registered with Softwrap at that point. And as the License Agreement explicitly states, an Author's single registration covers all products or services ordered from Softwrap: "The Author may only be registered once with Softwrap, for all Titles of that Author."[1] (Mitchell Decl., Exs. A & B.) Because Mr. Hauenstein does not contest the fact that he previously registered with Softwrap and at that point agreed to the terms of the License Agreement, and because the License Agreement states that it covers all software of an author wrapped through Softwrap, Mr. Hauenstein's 2004 wrapping transaction is governed by the License Agreement.

Other courts have held that "clicking" agreement to the terms of a contract is an "assent" for purposes of contract analysis. <u>See</u> <u>Riensche v. Cingular Wireless, LLC</u>, C06-1325Z, 2006 WL 3827477 (W.D. Wash. 2006) (concluding that plaintiff assented to arbitration clause when he indicated his agreement to the terms of service online); <u>see also</u> <u>Feldman v. Google</u>, Civil Action No. 06-2540, 2007 WL 966011, at *5-8 (E.D. Pa. March 27, 2007) (holding that where user had to "click" the "Yes, I agree to the above terms and conditions" button in order to proceed with the online transaction, there was reasonable notice of the terms and mutual assent to the contract);

---

[1] The Agreement defines "Title" as "the software of an Author that is to be distributed using the Softwrap software and services, and which is registered with Softwrap as the software of an Author." (Mitchell Decl., Exs. A ¶ 3, B ¶ 1.)

ORDER - 4

DeJohn v. The.TV Corp. Int'l, 245 F. Supp. 2d 913, 916 (N.D. Ill. 2003) (upholding validity of "click-wrap" contract). Thus, contrary to Plaintiff's suggestion, the fact that he did not "sign" the arbitration agreement is irrelevant. Here, Plaintiff had to register, and agree to the terms of the contract before he could ever use Softwrap's products. Plaintiff's assent to the terms of the License Agreement, manifested through his "clicking" the "I agree" button, binds him to the terms of the License Agreement.

**II.    Unconscionability**

In the alternative, Plaintiff argues that the License Agreement's arbitration provision should not be enforced because it is procedurally and/or substantively unconscionable. See Adler, 153 Wn.2d at 346-37 (holding that under Washington law, a contract is unenforceable if it is substantively or procedurally unconscionable). Whether a contract provision is unconscionable is a question of law. Zuver, 153 Wn.2d at 302.

**A.    Procedural Unconscionability**

Plaintiff argues that the arbitration agreement is procedurally unconscionable. To determine whether a contract is procedurally unconscionable, Washington courts look to the following circumstances surrounding the transaction: "the manner in which the contract was entered, whether [plaintiff] had a reasonable opportunity to understand the terms of the contract, and whether the important terms were hidden in a maze of fine print." Zuver, 153 Wn.2d at 304 (internal quotation marks omitted). The key inquiry is whether Plaintiff lacked a meaningful choice. Id. at 306.

Plaintiff argues that the arbitration agreement is unenforceable because it is part of an adhesion contract. Washington courts look to the following three factors to determine whether an adhesion contract exists: "(1) whether the contract is a standard form printed contract, (2) whether it was prepared by one party and submitted to the other on a 'take it or leave it' basis, and (3) whether there was no true equality of bargaining power between the parties." Id. Here, the arbitration agreement is an adhesion contract — it is a standard form contract prepared by Softwrap and offered

to customers with less bargaining power, who were required to submit to it on a "take it or leave it" basis. See Zuver, 153 Wn.2d at 304; see also Riensche, 2006 WL 3827477 at *6.

But the fact that a contract is an adhesion contract does not necessarily make it procedurally unconscionable. See Zuver, 153 Wn.2d at 304. Here, several factors weigh against a finding of procedural unconscionability. First, Mr. Hauenstein does not allege that the arbitration clause was "hidden in a maze of fine print." See id. Nor could he: the License Agreement clearly states the arbitration requirement, in regular size font, under the heading "Arbitration." (Mitchell Decl., Exs. A & B.) Second, Mr. Hauenstein does not suggest that Softwrap foreclosed a reasonable opportunity to consider the terms of the contract. See Zuver, 153 Wn.2d at 306 (noting that plaintiff had "meaningful choice" because she took fifteen days to consider the arbitration agreement, and could have contacted counsel or defendant during that time if she had concerns about the terms of the agreement). Mr. Hauenstein does not suggest that he was rushed to agree to the contract's terms or that he was denied an opportunity to contact counsel or Defendants regarding the arbitration clause.

Mr. Hauenstein argues that the contract is unenforceable because he lacked bargaining power equal to Softwrap, a multinational corporation. But the Washington Supreme Court has clearly stated that "the fact that unequal bargaining power exists will not, standing alone, justify a finding of procedural unconscionability." Zuver, 153 Wn.2d at 306. Plaintiff was not deprived of a "meaningful choice" of whether to agree to the contract's terms because he had notice of and a reasonable opportunity to consider its terms. Thus, this case is nothing like the one cited by Plaintiff, in which a court declined to enforce an arbitration clause contained in bills of lading that were prepared and placed on goods after the parties had entered into their contract, without any notice to the purchaser. See Pac. Lumber & Shipping Co. v. Star Shipping A/S, 464 F. Supp. 1314 (W.D. Wash. 1979). Because Plaintiff had a meaningful choice of whether to enter into the arbitration agreement, the arbitration clause in the License Agreement is not procedurally unconscionable.

ORDER - 6

### B. Substantive Unconscionability

Plaintiff also argues that the arbitration clause is substantively unconscionable. A contract clause is substantively unconscionable when it is one-sided or overly harsh. See Nelson v. McGoldrick, 127 Wn.2d 124, 131 (1995). "'Shocking to the conscience' 'monstrously harsh' and 'exceedingly calloused' are terms sometimes used to define substantive unconscionability." Id. Here, Mr. Hauenstein suggests that the arbitration clause is "one-sided" because it requires him to travel to London. But Plaintiff has not cited any legal authority suggesting that a foreign forum clause renders an arbitration clause unenforceable. And although Mr. Hauenstein states in his declaration that it is "unduly oppressive" for him to have to arbitrate in London, he does not state that he is unable to arbitrate there, for financial or other reasons. (See Hauenstein Decl. at 4-5.)

Plaintiff also argues that the arbitration requirement is outside of his reasonable expectations. He states that when he agreed to use Softwrap's services, he relied upon the fact that Softwrap had a United States address and that one of its executives used a local telephone number to contact him. He explains: "I mention this because I specifically did not want to be associated with a company that had foreign headquarters, and no one in the United States to contact or assist me if there were any problems." (Hauenstein Decl. at 2.) But his assumptions based on one phone number and a United States address do not override the plain and clear terms of the License Agreement. See Hearst Commc'ns., Inc. v. Seattle Times Co., 154 Wn.2d 493, 503-04 (2005) (holding that "surrounding circumstances and other extrinsic evidence are to be used to determine the meaning of specific words and terms used and not to show an intention independent of the instrument or to vary, contradict or modify the written word" of the contract) (internal quotation marks omitted). The Court concludes that the written terms of the contract govern, and that the contract provision requiring arbitration in London is not substantively unconscionable.

### III. Dismissal Without Prejudice is Appropriate

Section 3 of the Federal Arbitration Act ("FAA") gives courts authority to grant a stay pending arbitration. 9 U.S.C. § 3; Sparling v. Hoffman Constr. Co., 864 F.2d 635, 637-38 (9th Cir.

ORDER - 7

1988). But the Court also has discretion to dismiss an action where "[t]he language contained in the arbitration provision is sufficiently broad to bar all of plaintiff's claims." Sparling, 864 F.2d at 638. Softwrap requests that the Court order Mr. Hauenstein to proceed to arbitration and dismiss this action without prejudice. Mr. Hauenstein does not offer a preference.

The arbitration clause states that "[a]ll disputes between the parties arising from this agreement, including disputes as to the validity or existence of this agreement shall be referred to and finally determined by arbitration." (Mitchell Decl., Ex. A & B.) Plaintiff's claims all relate to his use of Defendants' shrink-wrapping product. (See Dkt. No. 1, at 19.) Plaintiff does not dispute that the arbitration clause encompasses all of his claims against Defendants. Because the language of the agreement encompasses all of Plaintiff's claims, the Court DISMISSES this action without prejudice and orders Plaintiff to submit his claims to arbitration.

**Conclusion**

The Court GRANTS Defendants' motion to dismiss this action without prejudice and to compel arbitration. Plaintiff Nick Hauenstein does not dispute the fact that he registered with Defendant Softwrap, and in doing so, "clicked" his assent to the terms of the License Agreement. That agreement is enforceable, and it requires that all disputes arising out of the agreement be arbitrated in London. Because the arbitration provision bars all of his claims, the Court orders that Plaintiff submit his claims to arbitration and DISMISSES this action without prejudice.

The clerk is directed to send copies of this order to all counsel of record.

Dated this 16th day of August, 2007.

Marsha J. Pechman
United States District Judge